IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| CATHY HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 08-42-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MILWAUKIE CONVALESCENT | ) | |
| HOSPITAL, INC., an Oregon corporation, | ) | |
| d/b/a MILWAUKIE CONVALESCENT | ) | |
| CENTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Richard C. Busse
R. Kyle Busse
Busse & Hunt
521 American Bank Building
621 S. W. Morrison Street
Portland, Oregon 97205

Attorneys for Plaintiff

Page 1 - OPINION AND ORDER

David G. Hosenpud
Sharon Bolesky
Lane Powell PC
601 S. W. Second Avenue, Suite 2100
Portland, Oregon  97204-3158

    Attorneys for Defendant

KING, Judge:

After over two years of troubled employment, defendant Milwaukie Convalescent Hospital, Inc. terminated plaintiff Cathy Howard after she removed a patient's confidential medical records from the facility. Howard alleges that she was actually fired in retaliation for requesting family medical leave and for reporting another employee to the Oregon State Board of Nursing. Before the court is Defendant's Motion for Summary Judgment (#22). For the reasons below, I grant defendant's motion and dismiss all claims with prejudice.

## MOTION TO STRIKE

Defendant moves to strike several pieces of evidence filed by Howard to support her opposition to the motion. I decline to rule on each objection but make some general comments.

Because I rely on the evidentiary record rather than on the concise statements of facts, I will not address defendant's objections to plaintiff's additional facts and plaintiff's allegedly inadequate denials of defendant's material facts. I also will not rule on relevancy objections. If I find a fact to be relevant to my analysis, it will be mentioned below. If a fact is not mentioned, it is not needed. Howard concedes that some of the evidence defendant moves to strike is hearsay so I will not rely on those passages.

## FACTS

Defendant Milwaukie Convalescent Center is a long-term care facility. David Eivers is the General Manager. William Price, Administrator, reports to David Eivers. Tammy Swan, Director of Nurses, reports directly to Price. Mark Eivers is Staffing Coordinator.

Plaintiff Cathy Howard is a registered nurse ("RN"). Defendant hired Howard as a charge nurse in March 2005. Howard reported to Swan and Shelly Mackey, the Resident Care Manager in charge of Station One.

Defendant maintains medical records for its residents which contain individually identifiable medical information subject to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Breach of HIPAA's privacy regulations can result in civil or criminal penalties for both individuals and facilities. Howard was aware that patient records contain health information subject to the requirements of HIPAA.

Under Oregon law, a nurse's license may be revoked or suspended for any "conduct derogatory to the standards of nursing," which includes "[u]nauthorized removal of client records, client information, facility property, policies or written standards from the workplace." ORS 678.111(1)(f); OAR 851-045-0015(2)(k)-(m) ("administrative rules"). Howard reviewed the administrative rules in 2001 when the Oregon State Board of Nursing ("Board") gave her a copy after a complaint was made against her. The relevant sections of the 2001 administrative rules are identical to the current 2005 version.

Defendant's Employee Handbook contains policies on confidentiality which state, in part, that employees are expected to "know and understand the confidentiality and privacy section of the HIPAA law." Bolesky Decl. Ex. 5 at 14-16. When Howard was hired, she received a copy of

the Employee Handbook and acknowledged in writing both the confidentiality policy and that her continued employment depended on adherence to the policy.

The Employee Handbook explains the progressive disciplinary system for policy violations. Class Three infractions are extremely serious and warrant termination on the first offense. Violation of confidential information is a Class Three infraction.

In July 2006, Price learned that several residents on Station One did not receive their scheduled medications. An internal investigation showed that a licensed practical nurse ("LPN") failed to complete her medications rounds. Howard was the RN charge nurse responsible for Station One on the day of the error so she was ultimately responsible for ensuring proper patient care and the administration of medication during her shift. On behalf of defendant, Price self-reported the incident to Clackamas County, Protective Services Division. After an investigation, the Oregon Department of Human Services assessed defendant a civil penalty of $1,600.

Defendant issued Howard ten disciplinary reports, medication error reports, and incident/accident reports, including a seven-day suspension on January 2, 2006 for allowing a certified medication assistant ("CMA") to administer a pain medication that required an RN to assess the effectiveness of the medication. Five of the reports were issued prior to the summer of 2007. Howard disputes that she made an error in regards to several of the reports.

During the summer of 2007, Howard asked Swan for family medical leave, asked Swan and Mark Eivers for the proper form, and wrote Price a note on September 22 asking for the form. Howard claims that they said they would look into it but never provided a form. According to Howard, Swan verbally counseled her for being out sick. On September 24, Swan asked Howard why she was out sick so much and that "[w]e can't have this." Howard Dep. at

Page 4 - OPINION AND ORDER

202. Howard said if they gave her an FMLA form, she would provide documentation. Eventually, Price and Swan told Howard that they did not believe that any law covered chronic intermittent illnesses. After Price looked into the issue and realized that the family leave acts do cover intermittent leave, he asked Howard on October 25 to bring a doctor's note.

Howard had been complaining to Mackey and then to Price about the performance of Marion Odell, an LPN, for a year and a half. Howard's complaints included Odell not charting insulins, blood sugars, and treatments; incorrectly handling doctors' orders and slips; and incorrectly transcribing orders into the medication administration record.

For over a year, Howard copied patient's confidential medical records to document errors made by Odell. Howard gave the records to Swan and Price to support her complaints. Neither told Howard that she should not copy medical records. Howard made these copies to protect the safety of the patients because she was concerned about Odell's competency.

In mid-October 2007, Howard complained to Mark Eivers that Odell's incompetence made her unsafe and that Howard would have to report Odell to the Board because nothing changed, even after all of her complaints. Mark Eivers does not remember this conversation. Howard made an oral report to the Board about Odell around October 23, 2007.

At the end of October 2007, Odell received a letter from the Board stating that a complaint was lodged against her related to her patient care. The letter did not explain the specific charges. Odell called Price to discuss the letter. The two did not mention any names in their conversation and did not know at the time who had lodged the complaint. When Odell reported for her first shift after receiving the letter, many of the staff told her that they had heard

of the complaint and that it was unfair and unjustified. Odell states that the "rumor mill" suggested that Howard reported her.

On November 9,[1] Howard brought in the requested doctor's note. Price told Howard that her medical leave requests would be honored. Howard never complained to Price that she was disciplined for requesting family medical leave.

Also on November 9, Price, Swan, and Mark Eivers met with Howard to discuss her failure to obtain a blood draw to check the Coumadin level for a patient, problems with other staff reading Howard's handwriting, inappropriate handling of physicians' orders, and interpersonal conflict with multiple staff members. Price put Howard on 30 days probation for these issues, which he considered to be performance problems related to patient care.

On November 12, Howard copied some patient records and took the copies to her home. She did this to protect herself from Mackey's threat to turn her into the Board for not properly medicating a patient. Howard states that Mackey was yelling at her in the hall in front of two other staff members. Howard believed that Mackey's allegations were false.

A charge nurse and a CMA told Price the next day that Howard had copied patient records to take home. Swan met with Price and recommended that he terminate Howard. When Howard came into work an hour or two later, Price, Swan, and Mark Eivers met with her. Howard admitted copying the records. In the middle of the meeting, the managers asked Howard to step outside for a few minutes while they discussed what to do. In consultation with Swan during that interlude, Price made the final decision terminate Howard. Price was most concerned

---

[1] None of the witnesses are sure if these events took place on November 8 or 9 but the difference is immaterial.

Page 6 - OPINION AND ORDER

with the fact that Howard took the records home.  He had never known of a health care employee taking a patient's confidential medical records home.  Mark Eivers was present during the decision but did now know before then that Howard would be terminated.  Howard was terminated when she returned to the room.

Price denies he knew prior to Howard's termination that she had complained about Odell to the Board.  Swan also denies knowing who filed the complaint against Odell.

Odell went to a hearing with an investigating officer of the Board on January 10, 2008.  The officer told Odell that he was going to recommend that the Board dismiss the charges in their entirety as having no merit.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The initial burden is on the moving party to point out the absence of any genuine issue of material fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party.  Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

I.   Perceived Disability Discrimination

Howard alleges she notified defendant that she suffered from bouts of tension headaches, irritable bowel syndrome, and occasional sinus infections for which she requested intermittent

Page 7 - OPINION AND ORDER

family medical leave. Howard further alleges that because of this notification, defendant terminated her in substantial part because it perceived her to be a disabled person, in violation of ORS 659A.112(1).

Howard concedes defendant's motion for summary judgment against the perceived disability claim. Accordingly, I grant summary judgment and dismiss the claim.

II.     Family Medical Leave Retaliation

Howard alleges that she was terminated in substantial part for requesting family medical leave, in violation of the federal Family Medical Leave Act ("FMLA") and the Oregon Family Leave Act ("OFLA").

    A.     FMLA

Defendant contends that Howard does not have an FMLA discrimination or retaliation claim because she did not oppose practices made unlawful by the FMLA. Defendant denies that it retaliated against Howard for requesting family leave. It notes that it honored all of Howard's requests for family leave even though she did not complete the required form and bring a doctor's note until November 9, 2007. Defendant maintains that it terminated Howard because she violated its policies, state law, and federal law by removing confidential patient medical records from the facility.

The FMLA makes it unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). The Ninth Circuit explains the application of this retaliation provision of the FMLA as follows: "In this circuit, however, we have clearly determined that § 2615(a)(2) applies only to employees who *oppose* employer practices made unlawful by FMLA, whereas

Page 8 - OPINION AND ORDER

§ 2615(a)(1) applies to employees who simply take FMLA leave and as a consequence are subjected to unlawful actions by the employer." Xin Liu v. Amway Corp., 347 F.3d 1125, 1133 n.7 (9th Cir. 2003) (citing Bachelder v. America West Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001)).

In response to my questioning at oral argument, plaintiff's counsel clarified that Howard was alleging an opposition claim under § 2615(a)(2).

To establish an opposition or retaliation claim, a plaintiff can establish a prima facie case by establishing the following factors: (1) involvement in a protected activity; (2) an adverse employment action; and (3) a causal link between the activity and the employment action. If the plaintiff establishes the prima facie case, the burden shifts as in a disparate treatment case. Porter v. California Dept. of Corrections, 419 F.3d 885, 894 (9th Cir. 2005) (Title VII). The causal link can be inferred from circumstantial evidence, such as the proximity in time between the protected activity and the retaliatory employment decision. Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1069 (9th Cir. 2003)(only nine days lapsed between complaint and termination). See also Ray v. Henderson, 217 F.3d 1234, 1244 (9th Cir. 2000) (first retaliatory action occurred two and one half months after first in a series of complaints).

> At summary judgment, the degree of proof necessary to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence." Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)).
>
> If established, the prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff. Id. The burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Id. If the employer meets this burden, the presumption of unlawful discrimination "simply drops out of the picture." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The

Page 9 - OPINION AND ORDER

> plaintiff then must produce sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext for discrimination. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000).

Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1037 (9th Cir. 2005).

"[A] plaintiff can prove pretext in two ways: (1) *indirectly*, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) *directly*, by showing that unlawful discrimination more likely motivated the employer." Noyes v. Kelly Services, 488 F.3d 1163, 1170 (9th Cir. 2007) (internal citation and quotation omitted). "[I]n the context of summary judgment, Title VII does not require a disparate treatment plaintiff relying on circumstantial evidence to produce more, or better, evidence than a plaintiff who relies on direct evidence." Cornwell v. Electra Central Credit Union, 439 F.3d 1018, 1030 (9th Cir. 2006) (noting tension with the Godwin v. Hunt Wesson, Inc., 150 F.3d 1217 (9th Cir. 1998), line of cases and their standard requiring specific and substantial circumstantial evidence of pretext).

Howard's only evidence of opposition is that when she was informed her schedule was being changed in late September or early October, she told Swan, "You're punishing me for being ill. I've asked about FMLA. I haven't been provided the form." Howard Dep. at 195. Although this is a single event, it is adequate to support the prima facie case. Moreover, the relatively short period between this complaint and Howard's termination–four to six weeks–is adequate to establish the causal link in the prima facie case.

Defendant's reason for terminating Howard is that she copied patient medical records and took them home. I will now consider whether this reason is a pretext for terminating Howard for opposing defendant's FMLA policies.

Howard relies on defendant's antipathy toward family medical leave, defendant's failure to follow its own policies, defendant's questionable discipline leading up to her probation, and the falsity of defendant's proffered reason for the discharge.

Defendant's managers were not well-informed on how the FMLA worked. There is no evidence, however, that Howard was ever denied time off when she was sick, even before she brought in her doctor's note. Swan did speak to Howard about the amount of sick time she was taking. Once the Price learned of the FMLA's provisions for intermittent leave, however, there were no further problems concerning Howard's absences.

I realize that Howard disputes several of the disciplinary records in her personnel file. In this retaliation claim, however, the important point is the causal link between Howard's opposition concerning defendant's FMLA policies and her termination. Months before Howard ever raised the issue of a family medical leave the first time, she received written discipline five times. Even if this discipline was questionable, it could not have occurred in retaliation to the opposition or even to the fact that Howard sought family medical leave. Moreover, defendant's Employee Handbook states that the violation of confidential information is a Class Three Infraction for which the discipline for a first offense is termination. Howard's arguments based on defendant's questionable discipline and failure to follow its own policies are unpersuasive.

Howard's last reason is the falsity of defendant's proffered reason for her termination. Howard notes that she had copied medical record for over a year to provide to Swan and Price

Page 11 - OPINION AND ORDER

when raising her concerns about Odell. None of this copying was disciplined and Howard was never told not to copy medical records.

In the prior instances, Howard copied medical records to protect the safety of patients that Howard believed were endangered by Odell's incompetency. Howard gave these records to Swan and Price. These actions were done for a legitimate reason and do not violate patient confidentiality. In contrast, for the final instance of copying leading to her termination, Howard admits she copied medical records to protect herself in case she was reported to the Board. She did not turn these records over to defendant's managers. Instead, Howard took them to her home where any unauthorized person could have viewed the confidential information. This is a clear violation of defendant's written policies and likely HIPAA as well. The earlier instances of copying medical records are so different from the final instance that I am surprised Howard tries to categorize them together.

Howard also points to the fact that at times, the reason defendant gives for her termination is that she copied medical records and at other times, the reason defendant gives for her termination is that she copied medical records and took them home.

"Fundamentally different justifications" for the employer's adverse action raise a genuine issue of material fact as to whether the stated reasons are pretextual because multiple reasons suggest the possibility that none of the official reasons are true. Payne v. Norwest Corp., 113 F.3d 1079,1080 (9th Cir. 1997). Pretext is not shown, however, if an employer supplements its explanation without retraction of a reason and none of the reasons are conflicting. Villiarimo v. Aloha Island Air, 281 F.3d 1054, 1063 (9th Cir. 2002).

The stated reasons for termination of copying medical records and copying medical records and taking them home cannot be characterized as fundamentally different justifications. The two reasons do not conflict; the second reason expands on the first.

Howard has failed to raise a factual issue that the stated reason for her termination is a pretext for terminating her because she opposed defendant's FMLA policies. Consequently, I grant summary judgment and dismiss her FMLA claim.

B.   OFLA

The OFLA has a retaliation cause of action: "It is an unlawful employment practice for a covered employer to [r]etaliate or in any way discriminate against an individual . . . because the individual has inquired about the provisions of [OFLA], submitted a request for family leave or invoked any provision of [OFLA]." ORS 659A.183(2). For the reasons stated under the FMLA opposition claim, I grant summary judgment and dismiss the OFLA retaliation claim.

III.   Wrongful Discharge

Howard alleges that she was wrongfully discharged because she reported to the Board conduct she believed in good faith to be unsafe patient care and because she inquired about or requested to take family medical leave.

A.   Law Applying to Wrongful Discharge

Absent a contractual, statutory, or constitutional requirement, the general rule is that an employer may discharge an employee at any time and for any reason. Babick v. Oregon Arena Corp., 333 Or. 401, 407 n.2, 40 P.3d 1059 (2002). Two exceptions exist. The first is when an employee is discharged for fulfilling an important public duty. Nees v. Hocks, 272 Or. 210, 536 P.2d 512 (1975) ( discharged for serving on jury duty); Delaney v. Taco Time Intl, 297 Or. 10,

Page 13 - OPINION AND ORDER

681 P.2d 114 (1984) (discharged for refusing to sign a false and arguably tortious statement). The second is when the plaintiff is discharged for exercising a job-related right that reflects an important public policy. Brown v. Transcon Lines, 284 Or. 597, 588 P.2d 1087 (1978) (discharged for filing a workers' compensation claim but statutory remedy in place at the time was inadequate). In a wrongful discharge claim, the employee must establish a causal connection between a protected activity and the discharge. Estes v. Lewis and Clark College, 152 Or. App. 372, 381, 954 P.2d 792, rev. denied, 327 Or. 583 (1998). The employee's protected activity must have been a substantial factor in the motivation to discharge the employee. Put another way, the employer's wrongful purpose must have been a "factor that made a difference" in the discharge decision. Id.

      B.     Request for Family Leave

Howard alleges that she was wrongfully discharged because she inquired about or requested to take family medical leave. The analysis similar to the FMLA claim. Howard has failed to raise a factual issue that her request for family leave is a substantial factor in the motivation to discharge her.

      C.     Filing Complaint with the Board

Defendant does not dispute that filing a complaint with the Board may be an activity for which Oregon law allows a wrongful discharge cause of action. Defendant argues that there is no evidence that Swan or Price, the decision makers concerning Howard's termination, knew prior to her termination that she reported Odell. Defendant notes that it did not terminate Howard at the November 9 meeting, even though it had received the complaint from the Board by then. The only intervening act between that meeting and Howard's termination on November 13 was her

removal of the patient's confidential medical files from the facility. Thus, defendant contends that Howard has no evidence of causation between her protected activity and her termination. Combined with the fact that Howard violated laws concerning patient confidentiality, defendants argue that she cannot raise a factual issue on causation to support her wrongful discharge claim.

Howard argues that her filing of the complaint with the Board on October 23, 2007 is so close to her termination on November 13, 2007 that the proximity in time alone is sufficient to raise a factual issue that her complaint caused the termination. Howard also notes that prior to her termination, Odell told Swan that she suspected Howard was behind the complaint. Earlier in October, Howard told Mark Eivers that she was going to have to file a complaint with the Board because defendant refused to take any remedial action after hearing Howard's complaints about Odell. Howard also points to other incidents occurring after she filed the complaint, including a verbal attack by Mackey, a rebuff by Price, suspension without pay by Mark Eivers, and probation by Price and Swan.

The first issue is whether Price and Swan, the decision makers on Howard's termination, knew that Howard reported Odell to the Board, something they both deny. The evidence supporting Howard is that she told Mark Eivers less than two weeks earlier that she was going to make the report. Mark Eivers attended the termination meeting even though he was supporting a lesser discipline. Moreover, Odell claims that the rumor mill at the facility was pointing to Howard as the reporter. I conclude that Howard has raised a factual issue that Price and Swan knew that she filed the report.

The causation element of the wrongful discharge tort requires that Howard's complaint was a substantial factor in her termination. Price and Swan knew of the Board report prior to the

Page 15 - OPINION AND ORDER

November 9 meeting with Howard which resulted in her probation due to performance problems, as perceived by Price. If Price wanted to terminate Howard because of the Board report, he could have done so at this meeting. The intervening event between the November 9 meeting and the November 13 termination was Howard's copying and taking home confidential medical records. Price has never known of an employee to do this in his entire career. It is extreme misconduct–a definite violation of defendant's policies and a likely HIPAA violation. Price terminated Howard the day he learned of her misconduct after she admitted what she had done and did not have reasonable justification. Defendant's written policy provides for termination for a first offense of this type of confidentiality breach. Howard's misconduct is an intervening event of such great import that no reasonable jury could conclude that Howard's filing of the complaint with the Board was a substantial factor in the motivation to terminate her.

I am unpersuaded by the other conduct occurring after the report to the Board on which Howard relies to prove causation. The verbal attack by Mackey was one in a long series. The two employees were unable to work together to the point that defendant was considering moving Howard to another part of the facility. The suspension without pay by Mark Eivers was for the day prior to the November 9 meeting. Eivers did not want Howard to work before the meeting and all participants were not available on November 8. Mark Eivers suspended Howard for November 8 and told her to come to the meeting on November 9. Likewise, the rebuff by Price is when he did not want to discuss Howard's complaints about Mackey and instead scheduled the November 9 meeting. All of these events are part and parcel of the same incident playing out over a few days. They are not persuasive in light of the magnitude of Howard's later misconduct.

For these reasons, I grant summary judgment against Howard's wrongful discharge claim.

Page 16 - OPINION AND ORDER

## CONCLUSION

Defendant's Motion to Strike (#47) is granted in part. Defendant's Motion for Summary Judgment (#22) is granted. This action is dismissed with prejudice.

IT IS SO ORDERED.

Dated this \_\_\_\_25th\_\_\_\_ day of August, 2008.

                                                  /s/ Garr M. King
                                                Garr M. King
                                                United States District Judge